A. B. CROZIER, appellant, v. LENOX MUTUAL INSURANCE ASSOCIATION (Norway, Iowa), appellee.

No. 50276.

(Reported in 110 N.W.2d 403)

John D. Randall, of Cedar Rapids, for appellant.

Tomasek & Vogel, of Grinnell, and Messer, Hamilton & Cahill, of Iowa City, for appellee.

SNELL, J.—Plaintiff, a farmer and landowner, seeks to recover against defendant, insurance company, under a windstorm insurance policy. Defendant, insurance company, issued to plaintiff a policy of insurance covering the buildings located on his farm, insuring plaintiff against loss by fire and windstorm. Plaintiff secured from defendant a "change in coverage endorsement" increasing the insurance on his barn from $6000 to $9500 and an endorsement providing insurance on the barn while under reconstruction. Defendant, insurance company, reinsured its windstorm risk with Farmers Mutual Reinsurance Company of Grinnell, Iowa, pursuant to a customary reinsurance practice between defendant and the reinsurance company.

Plaintiff's barn was a pole barn 50 feet wide, north and south, and 60 feet long, east and west, with a lean-to on the north side and a lean-to on the east side.

Plaintiff arranged with a building contractor to raise the barn, replace such parts of the supporting poles and siding as were deteriorated, and put in a new foundation and concrete floor. By use of jacks, some interior cross bracing and vertically supporting timbers, the barn was raised several inches so that its entire weight was carried by the supporting jacks. Through appropriate turns of the jacks the barn was brought to a straight and level position, determined through the use of a transit. The total weight of the barn, including the hay

stored therein, was between 40 and 50 tons. While supported by the jacks, the decayed lower ends of the poles forming the framework of the barn were sawed off and a trench for the pouring of a new foundation was dug.

At about 7:30 on the morning of June 28, 1958, shortly after the workmen had arrived and were preparing to start work, the barn was blown or fell several feet to one side. A dispute as to the cause of the collapse has resulted in this litigation.

Plaintiff made claim against the insurance company for the insured value of the barn. Defendant denied that the loss of the barn was due to windstorm or any other peril covered by its insurance policy.

Plaintiff offered testimony as to the methods used in raising the barn, the sufficiency thereof, and that the wind at the time of the loss was gusty with (estimated) varying intensities of from 20 to 50 miles an hour in gusts.

Defendant offered evidence of official weather reports from near-by weather observation stations, testimony of a meteorologist, testimony of plaintiff's closest neighbors, pictures of other buildings of an unsubstantial construction showing no damage, and other evidence as to the weather at the time of the loss. All of defendant's testimony indicated that there was no unusual wind at the time. The reports from weather reporting stations indicated that the wind speed at Cedar Rapids, Iowa City, Waterloo, Des Moines, Ottumwa and Moline, Illinois, varied from eight miles per hour to twenty-five and one-tenth miles per hour. Defendant also offered the testimony of a professor of Agricultural Engineering at Iowa State College specializing in the field of agricultural buildings, their structure, strength, the effect of wind on the buildings, and building practices in building, remodeling and repairing farm buildings. The professor visited plaintiff's farm and made an extensive investigation, took photographs and made calculations, and in response to a long hypothetical question propounded by defendant, gave as his opinion that the collapse of the barn was not due to windstorm but rather to the methods used in raising the barn.

The jury returned a verdict for the defendant. The factual issues as presented by the evidence and as submitted by the court's instructions have thus been answered by the jury. The jury has said that the loss was not the result of a windstorm as defined by the court's instructions.

I. Prior to trial, plaintiff, by amendment, sought to bring in as a party defendant Farmers Mutual Reinsurance Company as the real party in interest. A motion to dismiss as to the reinsurance company was sustained, and this ruling presents the first claimed error relied upon by plaintiff.

Plaintiff urges that under rule 2, Rules of Civil Procedure, every action must be prosecuted or defended by the real party in interest and that in this case Farmers Mutual Reinsurance Company, having reinsured the defendant-company to the extent of 100% of its risk, is the real party in interest and plaintiff has been prejudiced by the denial of his claimed right to name the reinsurance company as a party defendant.

The reinsurance contract was in evidence and the reinsurance arrangement between the two insurance companies was repeatedly brought out throughout all of the testimony and by the evidence. It was repeatedly brought out that the defendant, if found liable, would be reimbursed in full by the reinsurance company. In view of this record it is difficult to see how any prejudice to plaintiff with the jury could result from the failure to have the reinsurance company named as a party defendant.

It is well settled in Iowa, as well as in most other jurisdictions, that no action can be maintained by the insured upon a mere reinsurance contract, for the reason that he is neither a party thereto nor in privity therewith. Globe National Fire Ins. Co. v. American B. & C. Co., 198 Iowa 1072, 195 N.W. 728, 200 N.W. 737, 35 A. L. R. 1341; Globe National Fire Ins. Co. v. American B. & C. Co., 205 Iowa 1085, 217 N.W. 268, 56 A. L. R. 463; 29A Am. Jur., Insurance, section 1757.

Plaintiff's suit was based upon his insurance contract. He had no contract of any kind with the reinsurance company. There was no insolvency making resort to the reinsurance

necessary for plaintiff's protection. He was not in privity with the contract between his insurance carrier and the reinsurance company. The ruling of the trial court was correct.

The factual situations disclosed by the cases relied upon by plaintiff are at variance with the case at bar and are not controlling.

The recent case of Iowa Mutual Tornado Ins. Assn. v. Timmons, 252 Iowa 163, 105 N.W.2d 209, decided September 20, 1960, was an action in mandamus to require the Commissioner of Insurance to collect two per cent premium tax from Farmers Mutual Reinsurance Company, the same reinsurance company as here, based upon the allegation that the premiums collected by the company were for direct insurance and not within the exemption granted reinsurance premiums. The case was submitted on a motion to dismiss and was determined on the sufficiency of the pleadings and did not directly involve the question as to the reinsurance company being a necessary party to an action by an insured. This case states that when the reinsurer assumes direct liability to the original insured, there is a substitution of risks rather than reinsurance. The case of United States Fire Ins. Co. v. Smith, 231 Ala. 169, 164 So. 70, 103 A. L. R. 1468, is quoted with approval to the effect that the so-called reinsurer was not a reinsurer but was directly liable to the insured. The thought was then expressed that the same result would follow under a reinsurance contract such as was involved in that case and in the case at bar.

The factual situation as disclosed by the evidence in the case at bar is not the same as was assumed from the pleadings in the cited case.

We find nothing in the record in the case at bar, nor in the reinsurance contract or agreement or addendum attached thereto, bringing the reinsurance company within the provisions of the cited case, nor giving to the reinsurance company the control on which the statements in the cited case were based.

The case of Globe National Fire Ins. Co. v. American B. & C. Co., supra, is mentioned but is in no way overruled, and we conclude that it is controlling in the case at bar.

II. Plaintiff's second assignment of error attacks the cor-

rectness and propriety of a hypothetical question. Defendant called as an expert witness a professor of Agricultural Engineering. He was properly qualified to testify as an expert within his field of study and experience. In response to a long hypothetical question, prepared in collaboration between counsel and witness, he gave his opinion as to the cause of the barn's movement and collapse. Included in the assumption on which the answer was based was the "approximate" distance the barn moved from its former location. Plaintiff argues that the distance used in the question was not supported by the evidence and was improper.

Plaintiff's witnesses testified that by actual measurement the southwest corner of the barn had been moved 12 feet and the southeast corner 20 feet. One of defendant's witnesses said it "looked like it fell eight or ten feet" and "it looked like the barn fell just the distance of the jacks, maybe a little more." Another witness said the southwest corner of the barn had moved approximately six feet and the southeast corner approximately ten feet. While these distances were stated as approximate, they were within the evidence that the jury might consider.

It is not for us to speculate as to what influenced the verdict of the jury, but there was some interesting testimony involving calculations. The jury could, and obviously did, conclude from the evidence that the loss of the barn was not caused by a windstorm.

The ultimate question was the cause of the barn's collapse. Wind velocity, manner and extent of support, exposures, stresses and strains, and approved procedures in the construction industry were proper elements for consideration. It was clearly a field wherein expert opinion testimony was proper.

"* * * if the matter before the tribunal for determination is one in which opinion testimony, either lay or expert, is necessary or proper, the witness may express his opinion either as to the possibility, probability, or actuality of the matter of fact about which he is interrogated, and the answer will not be an invasion or usurpation of the province or function of

the jury, even though it passes upon an ultimate fact which the jury must determine." Grismore v. Consolidated Products Co., 232 Iowa 328, 361, 5 N.W.2d 646, 663.

 III. Except for the particularity referred to, supra, plaintiff's objection to the hypothetical question was general, claiming it to be a misstatement and contrary to the record, assuming facts not in the record and omitting facts bearing on the problem.

A similar objection to a hypothetical question was made in In re Estate of Telsrow, 237 Iowa 672, 681, 22 N.W.2d 792, 798. We quote from that case:

"The question was objected to, in substance, as incompetent, irrelevant, immaterial, no proper foundation laid, contains an incomplete recitation of facts and facts not borne out by the record. At best, it is doubtful if the objection to the question is sufficiently specific. There was no objection to any particular statement in the question. It is the duty of counsel to point out the particular defect or defects in such a question so the statements objected to may be corrected or eliminated. [citations]

 "Aside from the above, the rulings were not erroneous in the respects complained of here. While the facts stated in a hypothetical question must have support in the evidence [citation], the question need not contain all the facts shown by the evidence. [citations] Some facts which proponents complain were omitted from the question were brought out by their witnesses after the hypothetical questions were asked. It was not necessary, if indeed it were possible, to include in the question facts subsequently developed. [citations]

"We think the facts assumed in the hypothetical question have support in the evidence. At least some latitude must be allowed in the choice of facts stated in such a question and the trial court has considerable discretion in ruling on an objection thereto. Contestants were entitled to frame the question according to their theory of the case, as their construction of the evidence showed the facts to be or as the jury would have a right to find them. [citations]

"In any event, the ruling complained of was without prej-

udice since the jury was fully instructed that if the facts stated in the hypothetical question were incorrect, unfair, or untrue, or did not fairly include all facts in evidence upon the subject of the inquiry, then the opinions based thereon should be disregarded [citations]."

See also Ferris v. Riley, 251 Iowa 400, 101 N.W.2d 176.

What was said in the cited case applies here.

We find no error in the trial court's ruling on the evidence.

IV. Plaintiff was insured against loss by windstorm. He claimed his loss was by windstorm. Defendant claimed there was no windstorm and that the barn fell because of faulty support during reconstruction. Fact issues for the jury were presented.

Over objections of plaintiff the court gave Instructions Nos. 5, 6 and 8, as follows:

### Instruction No. 5

"As you have just been told, this is a suit to recover insurance on a barn claimed to have been destroyed by windstorm. You are instructed that a windstorm, in contemplation of law, is a storm characterized by high winds, with little or no precipitation, and an ordinary gust of wind no matter how prolonged is not a windstorm. In order to constitute a windstorm, the wind must be of such violence and velocity as to assume the aspect of a storm, that is, an outburst of tumultuous force. A windstorm means a storm of wind of unusual force and violence. A windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property by its own unaided action.

"The burden of proof is upon the plaintiff to show that the barn in question was destroyed by windstorm, and if he has failed to prove this by a preponderance of the evidence your verdict should be for the defendant."

### Instruction No. 6

"The policy of insurance in this case insures the plaintiff against all direct loss from various perils, including windstorm. It is one of the claims of the defendant that the damage to the barn of the plaintiff occurred not because of a windstorm but because of the manner in which plaintiff's contractor and

his employees attempted to repair the barn. It is the claim of the defendant that the contractor and his employees elevated the barn on jacks, and in so doing failed to properly and adequately support and secure the building while it was being so raised and was under reconstruction, and that the damage to the barn was the direct result thereof.

"Where, as in this case, a building is being repaired or reconstructed, the insurer, the defendant in this case, the insurance company, has a right to expect a reasonably proper job of construction; otherwise, the insurance coverage would include collapse or damage from poor workmanship, even if a slight wind was blowing at the time.

"If you have found that the contractor employed by the plaintiff failed to perform a reasonably proper job of construction, and that the barn of the plaintiff fell as a result thereof, you should return your verdict for the defendant."

Instruction No. 8

"The evidence establishes that the barn in question was under reconstruction. Therefore if you find that the barn collapsed as a result of faulty workmanship on the part of those doing the reconstruction, or some other cause other than a windstorm, your verdict will be for the defendant."

Plaintiff attacks the accuracy of Instruction No. 5 and the propriety of Instructions Nos. 6 and 8.

In defining the word "windstorm" used in insurance policies the leading Iowa case is Jordan v. Iowa Mutual Tornado Ins. Co., 151 Iowa 73, 77, 78, 130 N.W. 177, 178, Ann. Cas. 1913A 266. That case says: "The word 'windstorm' is a simple one and is defined by Webster to be: 'A storm characterized by high wind with little or no precipitation.' As used in the policies in suit it should be construed as something more than an ordinary gust of wind, no matter how prolonged; and it takes its meaning measurably at least from the other words with which it is associated, to wit, tornado and cyclone. However, it need not have either the cyclonic or the twirling or whirling features which usually accompany tornadoes or cyclones, but it must be more than an ordinary current of air no matter how long continued. In other words, it must assume the aspect of a storm, i. e., an outburst of tumultuous force."

This case has been widely cited in other jurisdictions and referred to by text writers. 29A Am. Jur., Insurance, section 1329, says: "In the case of a policy against damage by tornado, hurricane, or windstorm, the words 'tornado' and 'hurricane' are synonymous and mean a violent storm distinguished by the vehemence of the wind and its sudden changes. The word 'windstorm' partially takes its meaning from 'tornado' and 'hurricane,' and indicates wind of unusual violence. A 'windstorm' need not have either the cyclonic or the whirling features which usually accompany tornadoes or cyclones, but it must assume the aspect of a storm—that is, an outburst of tumultuous force. In the absence of a definition or limitation in the policy, a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it, assuming the property to be in a reasonable state of repair."

97 C. J. S., page 325, defines "windstorm" as follows:

"A storm characterized by high wind with little or no precipitation; a storm of wind of force and violence; a violent wind; a high wind that is violent and tumultuous; a wind of unusual violence.

"A windstorm is characterized by violence in the air and high wind, and the term does not include all winds, and something more than an ordinary gust of wind or current of air, no matter how long continued, is required. A windstorm must assume the aspect of a storm; that is, there must be an outburst of tumultuous force, and it may have the features of a cyclone or tornado, but to constitute a windstorm it is not necessary that it should have either the cyclonic or whirling features which usually accompany tornadoes or cyclones."

Although a majority of other jurisdictions are in substantial accord with Iowa, the Minnesota court in Albert Lea Ice & Fuel Co. v. United States Fire Ins. Co., 239 Minn. 198, 58 N.W.2d 614, indicated some disapproval and expressed a preference for a definition to the effect that a windstorm must be taken to be a wind of sufficient violence to be capable of

damaging the insured property either by its own unaided action or by projecting some object against it.

We adhere to the Iowa definition as a sound premise from which the trier of the facts can determine whether or not there was a windstorm.

■ Plaintiff requested an instruction defining a windstorm as "a wind of sufficient violence to be capable of damaging the insured property." Such a definition is too broad. It is unrealistic. We do not find it supported by authority. Where such words have been used, there is an added qualification that the property be in a reasonable state of repair.

In the case at bar the trial court deleted from the instruction in the Jordan case reference to tornadoes and cyclones and added a sentence: "A windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property by its own unaided action."

The instruction as given is supported by authority and was germane to the evidence. The added sentence might not be appropriate in all cases but in the case on trial was a proper adaptation to the issues and evidence.

■ Plaintiff claims error in the giving of Instructions Nos. 6 and 8. These instructions deal with the issue of cause. In the field of causation when the main issue is what brought about the loss, a litigant may offer evidence and when his theory is supported, he is entitled to an instruction thereon. This universal rule is concisely stated in 88 C. J. S., Trial, section 302, page 819: "The court should instruct the jury on all the material issues presented by the pleadings and the evidence. Each party is entitled to have his whole cause of action or whole defense presented to the jury, and where more than one cause of action is alleged, plaintiff is entitled to have the jury clearly and definitely instructed on each of them."

The instructions were correct and appropriate.

We have examined the record of the procedure, the evidence, the rulings thereon and the instructions. We find no reversible error.

The case is affirmed.—Affirmed.

All JUSTICES concur.