I. GLEN DAUGHERTY ET AL., APPELLEES, V. NEBRASKA
NATURAL GAS COMPANY, A CORPORATION, APPELLANT.

112 N. W. 2d 790

Filed December 22, 1961. No. 35001.

*Stewart & Stewart,* for appellant.

*Smith Brothers* and *Lawrence F. Weber,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SIMMONS, C. J.

This is an action based on negligence for damages for injury to and destruction of personal property by fire. Plaintiffs are husband and wife and sue as joint owners of the cause. Defendant is a distributor of natural gas in Lexington.

Issues were made and trial had to a jury resulting in a verdict for the plaintiffs. Defendant appeals.

We affirm the judgment of the trial court.

Plaintiffs resided in a rented house. Chronologically, the events needing consideration which the jury could have found as true generally are as follows.

Defendant's main is in the street in front of the property involved. In 1947 the then owner of the property had a service line attached to defendant's main. Plaintiffs were not tenants of the property at that time. The

service line went across the street and entered the property. The property owner paid for this line. The meter, however, was located outside of and generally against the house.

In May 1957, vegetation turned yellow along the service line. It was excavated by the defendant for about 20 feet. Corosion leaks were found in the pipe so that natural gas was leaking into the soil for a length of several feet. The defendant tested the remaining pipe, was satisfied that it did not then require replacement, and replaced a distance of some 10 feet of pipe where the leaks were discovered.

On March 31, 1959, following a rain, the wife saw bubbles coming out of the ground near the meter. She reported it to her husband who gave it no particular thought. An expert witness testified that the bubbles suggested either air being forced out by rain filling the cracks in the soil, or by gas from decomposing vegetable matter, or by natural gas leaking from the main. No report was made to the defendant.

On the evening of April 2, 1959, plaintiffs, members of their family, and guests were about the home. No cne detected the odor of natural gas.

About 2 a.m., on the morning of April 3, 1959, there was a severe explosion followed by fire.

On April 9, 1959, the supply line to the house was opened and a large hole found in the line about a foot from the riser that led to the meter. Natural gas escaped from that hole. The leak was in that portion of the original 1947 installation which had been left in the ground and in use when the defective pipe was found and removed in 1957.

The defendant has about 40 miles of mains in the city of Lexington. Once each year, usually during July, it employed a private firm to examine its lines for leaks. These examinations appear to have been superficial. A crew of men either walked or drove along the streets and alleys. If they saw discolored vegetation or other

indications of escaping gas, it was reported to the defendant. Whether they went by the property here involved does not specifically appear. No report of leakage was made. At best, the examination was some 8 or 9 months before the explosion here involved.

The defendant also employed a crew of men whose sole job was to make a detailed instrument examination of all of its lines for leakage each year. They were working in the vicinity of plaintiffs' home when the explosion occurred. It does not appear when the last detailed examination of this particular main was made by defendant.

Tests made after the explosion showed a wide diffusion of gas in the soil in the area of the leak involved.

Plaintiffs alleged defendant's negligence as the proximate cause of the explosion in that the defendant failed to properly maintain, inspect, and repair the line; failed to keep the line in good repair; failed to locate and determine the source of escaping gas after notice of the defect was had; failed to install suitable piping after it had knowledge of the defect; failed to completely and thoroughly inspect the supply line after notice of the defect; and failed to exercise reasonable care in the handling and distribution of a substance known to be highly dangerous.

Defendant answered that it did not own the line where the defect was found, did not install it, and that it belonged to the owner of the property. Defendant denied generally. It specifically denied negligence; alleged that any explosion was the result of negligence of the plaintiffs; and alleged contributory negligence.

Defendant's first argued assignments of error are that the trial court should have sustained its motion to dismiss, made at the close of plaintiffs' case-in-chief and at the close of all evidence. These seem to be predicated on the proposition that negligence was not shown by sufficient evidence to create a jury question which in

turn rests on the premise that it had no notice of a defective leak in the pipe.

The evidence does show that this pipe was placed in the ground in 1947. It further shows that by 1957 the pipe was, to a large extent, deteriorated, corroded, and in a leaking condition. It would seem that fact alone should have alerted the defendant to an investment in the installation of a service line of new pipe. Common sense, it seems, would dictate that it took only the running of time for the balance of the pipe to become a dangerous instrumentality. But the defendant elected to take that chance. The inevitable leakage and explosion occurred.

The parties hereto refer to some one or more of our decisions and quote excerpts from them which they confidently assert sustain their positions.

In Mattson v. Central Electric & Gas Co., 174 F. 2d 215, the United States Court of Appeals of the Eighth Circuit had occasion to examine into, review, and state the rules of this state in a quite similar situation. Rather than here laboring an examination of our decisions, we accept the conclusions of that court as our own. With reference to the facts of that case, the court said: "The Company, as has been observed, furnished the material and laid these pipes and used them for the transmission of its gas to its meter in the school building. The natural gas which the Company was transmitting through this pipe was of highly dangerous character and it owed a duty to the public to exercise a degree of care commensurate with the danger involved in the transaction of its business. It knew when this gas line was laid and it was its duty to know what the probable life of the gas pipe would be in the soil where it was laid. While the defendant did not have actual notice that gas was escaping from this perforated pipe, it did know that gas would escape from a perforated pipe and it was charged with knowledge, at least the jury might have so found, that this pipe had probably become per-

forated. It knew that the pipe had been in the ground for more than twenty-five years and it, rather than the plaintiff's decedent, should have known what the condition of the pipe was and the danger arising from its deteriorated condition. Under the circumstances disclosed by the record the jury might properly have charged the Company with constructive notice and if so that notice is just as effective as actual notice. While the foundation of liability for negligence is knowledge, in law an opportunity by the exercise of reasonable diligence to acquire knowledge is equivalent to knowledge, and one under a duty to use care for which knowledge is necessary cannot avoid liability because of voluntary ignorance. * * * Under the Nebraska decisions the Gas Company could not delegate the duty it owed to the public to exercise proper care to maintain its gas system in a safe condition, but it had the continuing duty to exercise proper care to prevent injury from escaping gas. Hence, the mere fact that the service pipe was paid for and possibly was the property of the consumer, did not shift the duty of exercising proper care. The gas in the service pipe, as before noted, was that of the defendant, and as long as it remained its property it was under the duty of using proper care to protect the public from injury caused by the dangerous propensities of that property. A proper regard for the safety of the public would seem to forbid the owner of such a dangerous agency to avoid liability for damage by simply housing such property in a container belonging to some one else, particularly when the owner of such dangerous agency knows, or is charged with knowledge, that the housing or container facilities are in a decayed, dilapidated and deteriorated condition. The agents and employees of the Company are presumably skilled in the business of their employer. They knew, or were presumed to know, the probable life or durability of the materials used, and where the pipes have been in use as long as the pipes in the instant

case, the jury might reasonably find that the Company was charged with notice of their condition. * * * we conclude that it can not be said, under the applicable law, that there was no negligence on behalf of the defendant, but the facts were such as to require that question to be submitted to the jury."

We find no merit in the assignments.

Defendant next argues that the wife was guilty of contributory negligence sufficient to bar recovery as a matter of law. This is predicated on the fact, as testified to by her, that she saw bubbles coming from the ground near the meter. Two experts in the gas field said that it would have suggested a gas leak to them and that they would have notified the gas company or taken some action. Plaintiff Vivian Daugherty was a housewife. From the fact that she saw bubbles, defendant assumes as established that she had "notice of gas escaping from near the meter" and on that unsupported premise bases its argument of contributory negligence. Defendant cites no authority, and we know of none, that supports this contention. It is not sustained.

Plaintiffs alleged damage and prayed for judgment in the sum of $10,148. The only testimony as to damages was that of the husband who itemized their loss at $8,374. The jury reutrned a verdict for $7,957. The trial court instructed the jury of the amount alleged in plaintiffs' petition. Defendant asserts it was a prejudicial error. Prejudice does not appear.

Also, the trial court referred, in its instructions, to "defendant's service line." There is evidence that, in part at least, it belonged to the property owner. That it was used by the defendant was not disputed. The court also did not instruct on an alleged issue of "notice of defect." Without doubt, the defendant had notice of the defective condition of the pipe, although not of the leak itself. These last two matters are disposed of in the quote from Mattson v. Central Electric & Gas Co., *supra.*

We find no prejudicial error in the matters argued by defendant.

The judgment of the trial court is affirmed.

AFFIRMED.