John S. **BILLINGS** and Virginia **T.**
**Billings, Appellants,**

v.

**INVESTMENT TRUST OF BOSTON,**
**Appellee.**

No. 16936.

United States Court of Appeals
Eighth Circuit.

Nov. 16, 1962.

Robert V. Light, Little Rock, Ark.,
Thomas G. Meeker, Philadelphia, Pa., on
the brief, for appellants.

Robert Shults, of Lester & Shults, and
Wright, Lindsey, Jennings, Little Rock,
Ark., for appellee.

Before SANBORN and BLACKMUN,
Circuit Judges, and REGISTER, District
Judge.

REGISTER, District Judge.

This is a diversity case. Jurisdictional
prerequisites being present, it was re-
moved by appellee from the Pulaski Coun-
ty Chancery Court of the State of Ar-
kansas to the United States District
Court. Pursuant to motion of appellee,
the purported service of summons was
quashed and the complaint was dismissed.
This appeal follows.

The essential facts are brief. Appel-
lants (plaintiffs) purchased shares in the
defendant company (a Massachusetts
corporation) in Atlanta, Georgia, in 1955,
1956 and 1957 through a local broker who
retained custody of the certificates for
the shares. The complaint in effect al-

leged that pursuant to stock transfer authorizations purportedly executed by plaintiffs, but which were in fact forgeries made without the knowledge, assent or authority of plaintiffs, the defendant caused said shares to be cancelled, and altered the corporate stock books accordingly. It was stipulated that such fraud practices, if so perpetrated, were perpetrated in 1958 in some state or states other than Arkansas and had no connection with Arkansas. Appellants moved to Arkansas during 1961 and were, at the time of the commencement of this action and of the trial, residents and citizens of Arkansas. In 1954 appellee filed a "Surety Bond" and a "Consent to Service" with the Arkansas State Bank Department for purpose of compliance with the Arkansas Securities Laws. The complaint does not allege any violation of such laws.

The sole question presented to and decided by the trial court was whether service could be obtained on the defendant pursuant to the Consent to Service.

The Consent to Service is as follows:

"Pursuant to resolution duly adopted at a (regular) meeting of its Trustees held on 1st day of February, 1954, at its office in Boston, Massachusetts, the Investment Trust of Boston, a Trust, hereby agrees that suits and actions may be commenced against it, for any cause arising out of sale, or offer of sale, by it, in the proper courts of any county in the State of Arkansas, in which a cause of action may arise or in which the plaintiff may reside, by the service of any process or pleading which is authorized by the laws of the State of Arkansas, on the State Bank Commissioner of Arkansas, said service of process in such cases to be as valid and binding as if due service of process had been made personally on the proper officers of this Trust.

"Nothing herein contained shall subject said trust to the jurisdiction of the State of Arkansas, otherwise than herein expressly agreed, and nothing herein shall deprive said trust of the right which it may have to remove any suit to the Federal Court.

"Witness the Trust signature and seal of said trust by its duly authorized officers, this 14th day of April, 1954.

"Investment Trust of Boston
By /s/ Robert L. Moore
President"

Following hearing on the aforementioned motion, and subsequent dismissal of the action, Judge Gordon E. Young, in a memorandum letter opinion, set out his reasoning for the action taken. The body of said letter opinion is as follows:

"In 1947 the Arkansas Legislature enacted a comprehensive act for the regulation of the sale of securities in the State of Arkansas called 'The Arkansas Securities Act', Ark.Stats. 67–1201, 67–1234. Its purpose obviously was to protect the public from the unlawful sale of securities in the State of Arkansas.

"One section of the Act, 67–1209, provides that any seller of securities covered by the Act, before receiving approval of its application to sell within the State, should file with the application 'the irrevocable written consent of the issuer applying for such registration that in suits, proceedings and actions growing out of the violations of any provisions of (certain sections of the Act) the service on the Commissioner of any notice, process or pleading therein authorized by the laws of this State shall be as valid and binding as if due service had been made on the issuer.'

"The consent to service filed with the Arkansas State Bank Commissioner as a prerequisite to the sale of shares of the plaintiff (sic) in Arkansas was filed pursuant to this section.

"It is undisputed that the shares involved in this lawsuit were purchased by the plaintiffs from a dealer

in Georgia in 1955, 1956 and 1957, when the plaintiffs resided in Georgia. The alleged forgeries by third parties all occurred in Georgia during the year 1958 while plaintiffs were still residing in Georgia. After these transactions the plaintiffs moved to Arkansas.

"It is clear that no violation of the Arkansas Security Laws is in any way involved under the allegations of the complaint.

"I have no doubt in my mind that the purpose of this statute was to protect the public from sales arising in or related to the State of Arkansas, and the limited consent to service filed in accordance with the Act was restricted to those purposes. Certainly it should not be extended so as to permit suits in Arkansas arising out of transactions occurring anywhere in the United States with no relation to the State of Arkansas.

"In 1959 the Arkansas Legislature passed a new and more comprehensive 'Securities Act' covering the same regulatory field.

"In this new Act, the section on 'Consent to Service of Process on Commissioner', 67–1260(a) applies to persons who sell or offer to sell when:

"(1) An offer to sell is made in this state, or

"(2) An offer to buy is made and accepted in this State.

"I think it should also be noted that the repealing clause of the 1959 Act, Section 29 of Acts 1959, No. 254, provides that no civil suit may be maintained to enforce any liability under prior law unless brought within any period of limitation which applied when the cause of action accrued, and in any event within two years after the effective date of this Act.

"The effective date of the 1959 Act was July 1, 1959. This action was instituted in the Chancery Court of Pulaski County, Arkansas, on August 2, 1961, more than two years. later.

"In accordance with these views, I have sustained the motion of the defendant to quash the service of summons issued out of the Chancery Court of Pulaski County, Arkansas, and have dismissed the complaint.

"This memorandum letter opinion shall be filed as part of the record in this case."

Appellants concede that the language of the statute is not broad enough to reach the subject matter of this suit. However, they contend that the Consent to Service here involved was the voluntary act of the appellee, that its scope should be measured by a reasonable interpretation of its plain language and without reference to extrinsic sources wherein additional limitations might be found, that the Consent itself is the proper measure as to its amenability to suit in Arkansas, and that the plain language of such Consent embraces or extends to the subject matter of this action.

■ The issue involved (i. e. the scope of such Consent) is a matter of Arkansas law. Charles Keeshin, Inc. v. Gordon Johnson Co., D.C., 109 F.Supp. 939, 942; Restatement, Conflict of Laws, Sec. 589. As such issue has not been decided by the Supreme Court of Arkansas, it was the trial court's function to determine what that Court would probably rule in a similar case. King v. Order of United Commercial Travelers of America, 333 U. S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608.

■ That "A foreign corporation, not within the purview of any state statute, may voluntarily submit to the jurisdiction of the courts of the state" (Flour City Ornamental I. Co. v. General Bronze Corp., D.C.Minn., 21 F.Supp. 112, 116) is so well established as to be beyond effective challenge. Neirbo Company et al. v. Bethlehem Shipbuilding Corporation, Ltd., 308 U.S. 165, 175, 60 S.Ct. 153, 84 L.Ed. 167; Davis v. Smith, 3 Cir., 253 F.2d 286, 289.

■ By the specific terms of the Consent to Service, appellee agreed that

"suits and actions may be commenced against it, for any cause arising out of sale, or offer of sale, by it. \* \* \*" Appellants argue that "arising out of" should be interpreted to mean "having any connection with", and, as support for such contention, cite various decisions of courts which adopt the "complete-operation" doctrine, in their interpretation of the so-called "loading and unloading" clause in certain liability insurance policies. Among those cited are: American Auto. Ins. Co. v. Master Bldg. Supply Co., D.C., 179 F.Supp. 699, and Maryland Casualty Co. v. Dalton Coal & Material Co. (8 Cir.), 184 F.2d 181. In American Auto. Ins. Co., supra, the Court, in discussing the reasonableness of its interpretation in favor of the "complete-operation" doctrine, specifically stated (p. 704) that "Such an interpretation of the contract requires no strained construction and does no violence to the fair meaning of the terms used." The Court further stated (p. 704), "Of course, the facts of the case must establish a causal relationship between the use and unloading of the vehicle and the injuries inflicted." In Maryland Casualty Co., supra, the appeal was from the trial court's determination that the "complete-operation" doctrine was the law of Missouri. While this Court did, in its opinion, discuss the rationale of the two views, and did as to that aspect of the case affirm the trial court, the basis for such affirmance was clearly stated. This Court said (p. 183):

"Even, however, if the insurer's argument could be regarded as of force, the most that could be said in the situation would be that the question is one of unsettled law in Missouri and so may be doubtful. That, however, is not of aid to the insurer here, for we have repeatedly said that on doubtful questions of state law, unless we have a clear conviction that the trial judge is in error, we will accept his considered appraisal of the local law of his jurisdiction."

We are of the opinion that the interpretation argued by appellants does "require a strained construction" and does do "violence to the fair meaning of the terms used". The Consent filed was specifically limited to causes of action "arising out of sale, or offer of sale" by appellee. The alleged cause of action is not based upon, and does not involve, a sale or offer of sale. The cause of action is based upon fraud, by virtue of forgery of stock certificates and the alleged resulting breach of appellee's fiduciary duty in cancelling or transferring the shares of stock represented by such certificates, which alleged acts occurred after the completed sale. We are satisfied that the Consent is not broad enough to embrace or cover the alleged cause of action.

If the terminology of the Consent heretofore quoted should be considered ambiguous (and we believe it is not), it appears that, under Arkansas law, the Consent should be construed in the light of its purpose, and that the statute pursuant to the requirements of which the Consent was filed should be considered as being a limiting factor in determining the meaning of the Consent.

The Supreme Court of Arkansas, in National Liberty Ins. Co. v. Trattner, 173 Ark. 480, 292 S.W. 677, said (p. 680):

"A fair construction of our law, under the provisions of which foreign corporations are authorized to do business in the state upon the appointment of an agent upon whom process can be served, made primarily to secure local jurisdiction in respect of contracts made and business done within the state, would seem to require only that such corporations shall be subject to suit for any liability arising from or growing out of contracts made or business done in the state or necessarily incident thereto, and not that they shall be required by service of summons upon said agent to be subjected to suits of nonresidents of the state upon foreign causes of action, transactions, and causes of action arising outside the state and in no wise incident, related to, or connected with

contracts made or business done in the state."

The reasoning of the Court and principle pronounced in Trattner, supra, was later expressly approved by the Arkansas Supreme Court in Protas v. Modern Inv. Corporation, 198 Ark. 300, 128 S.W.2d 360, 364.

The purpose for which the Consent to Service was filed was to comply with the requirements of the Arkansas Securities Act, as a prerequisite to offering for sale, or selling, shares of Investment Trust. The applicable statute is referred to in the trial court's letter memorandum, supra. The stated reason for the requirement that such Consent be filed, is to assure that appellee will be amenable to actions "growing out of the violations of any provision of" certain sections of the Act. No such violation is involved in this case. Appellee also filed a Surety Bond to satisfy the requirements of the Act, which Bond was also a statutory prerequisite to the offering for sale, or selling, of such shares. The Bond was conditioned on the satisfaction of any judgment "in a suit or action brought by a purchaser of securities in which it shall be found or adjudged that such purchaser was defrauded in the sale of such securities." The coverage of the Bond is expressly limited to cases of fraud in the sale of securities. It could be reasonably assumed that the Legislature of Arkansas intended that the scope of the required Consent to Service should be limited to the limitations of the conditions of the Bond. Appellants concede that the statutory requirements do not extend to the facts of this case.

■ We have deemed it advisable in this case to state that, in our opinion, the conclusions of the trial court herein were correct, and our reasons therefor. Should the issue before us be considered solely upon the proposition that it is a "doubtful question" of state law, the trial court's action must be affirmed under the well-established principle stated by this Court in Homolla v. Gluck, 8 Cir., 248 F.2d 731, thereafter oft-repeated, and very recently restated by us in Charter Oak Fire Insurance Company v. Mann, 8 Cir., 304 F.2d 166, 167. " * * * we will not substitute our opinion * * * for that of the District Court in a diversity action, where it is not clearly demonstrated that a Federal District Judge has misapplied the local law of his State."

"The issues raised by this appeal are analogous to those presented to the District Court. As those matters are presented to us we are, in effect, asked to put ourselves in the place of the District Judge and * * * apply conclusions of law thereto such as appellant deems the local law of Arkansas. This we cannot do. Palmer v. Aeolian Co., 46 F.2d 746 (8 Cir. 1931), cert. den. 283 U.S. 851, 51 S.Ct. 560, 75 L.Ed. 1458. We can only review judgments of the District Courts for errors of law and abuse of discretion committed in the concoction of their judgments. The burden to demonstrate error as to those matters is on appellant. Coca Cola Bottling Co. of Black Hills et al. v. Hubbard, 203 F.2d 859 (8 Cir. 1953). That burden is a peculiarly heavy one in a diversity case controlled by state law. Western Casualty & Surety Co. v. Coleman, 186 F.2d 40 (8 Cir. 1950)." Charter Oak Fire Insurance Company v. Mann, supra.

Appellants have presented nothing which convinces us that the District Judge who decided the issue presented to him below either misconceived or misapplied the law of the State of Arkansas and we are of the opinion that the action taken was correct.

Affirmed.