Jerry SIMPSON, Appellant,

v.

SKELLY OIL COMPANY, a Corporation,
Appellee.

No. 18366.

United States Court of Appeals
Eighth Circuit.

Feb. 3, 1967.

Rehearing Denied March 3, 1967.

Harold T. Beckman, Council Bluffs, Iowa, for appellant and filed brief with Robert J. Laubenthal, Council Bluffs, Iowa.

Emmet Tinley, Council Bluffs, Iowa, for appellee. Jack W. Peters, Council Bluffs, Iowa, was with him on the brief. Also on the brief was Sam C. Oliver, Tulsa, Okl.

Before VAN OOSTERHOUT and GIBSON, Circuit Judges, and NICHOL, District Judge.

NICHOL, District Judge.

This is a diversity action for personal injuries sustained by plaintiff (hereafter Simpson) in Council Bluffs, Iowa, on June 16, 1962, as the result of an explosion which occurred when he attempted to light a gas hot water heater in the basement of his residence. Simpson commenced this action against the defendant (hereafter Skelly), the supplier of the propane gas used as fuel for the gas hot water heater. The complaint was in three counts: I Negligence; II res ipsa loquitur; and III breach of warranty; it sought damages in the amount of $75,000 and costs, and demanded a jury trial on all fact issues.

The trial court, prior to submission of the case to the jury, withdrew counts II and III, and with reference to count I withdrew all specifications of negligence, except that charging Skelly with negligently and carelessly failing to inspect the pipes, connections and equipment after being notified of a leak on or about May 11, 1962. The jury returned a verdict for Simpson and against Skelly and fixed Simpson's recovery at $45,-623.67. On May 18, 1965, judgment was entered thereon.

On May 27, 1965, Skelly filed a motion for judgment notwithstanding the verdict and for new trial, and on June 3, 1965, filed an amendment to the motion for new trial alleging newly discovered evidence. Evidence was adduced at a hearing on the motions on August 9, 1965, and on December 16, 1965, the court ordered that Skelly's motion for judgment n. o. v. be sustained and that the verdict of the jury and judgment thereon be set aside and judgment entered for Skelly. In the alternative, it was ordered that Skelly's motion for new trial be sustained as to paragraphs 1, 5, 6, 14, and 15, and in such event, Skelly was granted a new trial on each ground. Plaintiff filed timely appeal to this court.

The evidence shows the relevant facts to be as follows: Simpson, his wife and children moved into a rented house at 2011 Fourth Avenue, Council Bluffs, Iowa, in September, 1961. He had a cooking stove that used LP gas for fuel, which was connected by Skelly at the time he moved in. In October, 1961, the water heater was converted from natural gas to use propane gas by Skelly and was equipped with a "100% shut-off" valve which closed off the supply of gas whenever the pilot went out. A black iron pipe, known as a "riser," ran from a "drip-tee" at the back of the heater up to a natural gas supply line near the floor joists in the ceiling. Another pipe extended from the drip-tee to the water heater. Skelly's employee changed the orifices and disconnected the riser at the top from the natural gas supply line. He ran a copper line from the riser to the service line which had previouly been installed between the propane cylinders and the stove. All fittings, including the drip-tee, were checked for leaks by means

**566**

of soap suds and a manometer. None were found at that time.

When the fuel supply of LP gas (propane) furnished by Skelly became exhausted, Simpson would turn off the heater until a new supply was furnished. When a new supply was delivered, Simpson would relight the heater.

Several weeks prior to May 11, 1962, Simpson thought he detected the odor of propane around the water heater, although it worked properly when he lighted it. He did not report it at that time. On May 11, 1962, a gas delivery was made to the Simpson residence. Both Simpson and his wife testified: That Simpson was present at that time and that Simpson told the employee of Skelly making the delivery that he thought he had smelled gas in the basement previously and asked him to take a look to see if there was a leak; that the employee asked for a can of pressurized shaving cream which he took to the basement; that he remained there for five or ten minutes; that when he returned upstairs he told plaintiff there was no leak and that the equipment was fine. Later the same day, Simpson lighted the heater.

Skelly's employee, Donald Ginkins, who made the delivery on May 11, 1962, testified that he saw Mrs. Simpson and some children but that he had no conversation with her about the service. He denied that any complaint was made to him about a leak and denied that he ever made an inspection.

The next propane delivery by Skelly was on June 13, 1962. Prior to that date, the supply of propane was exhausted and Simpson had turned the hot water heater to the "off" position. When the employee, Victor McCarthy, made the delivery, he asked Mrs. Simpson if he could light the water heater for her and she told him that Simpson would do it when he came home.

Simpson did not attempt to light the water heater until approximately 7:30 P. M. on June 16, 1962. He testified that he did not smell any propane when he went to the basement. He turned the heater control from the "off" position to the "pilot" position. When he struck a match to light the heater, an explosion occurred.

On June 18, 1962, the explosion was investigated by the Chief and Assistant Chief of the Council Bluffs Fire Department. Their inspection revealed no leaks in the Skelly equipment, pipes or fittings, but old dirt was observed over and around the pipes and fittings in back of the heater. The dirt was then removed from around the "drip-tee," the pipes connected to it, and the heater. A leak was discovered at the connection between the drip-tee and the riser. These were not furnished and the connection was not made by Skelly. The official records of the Council Bluffs Fire Department reveal that the leak was discovered at a tee from a ¾ inch galvanized pipe to the heater and that eighteen inches of dirt around the pipe had to be moved to get to the tee to check the leak.

The contents of the propane cylinder were found to be well-processed, commercial propane of good quality. Both cylinders contained ethyl mercaptan, an odorizing agent, at a ratio of approximately two pounds per 10,000 gallons of propane, or about twice the minimum amount required by applicable state rules and regulations.

An expert witness for Simpson testified that the human olfactory system, or sense of smell, serves as a warning system; that it is so sensitive that it can detect one part of a substance in twenty-three million parts of air; that sensory adaptation is the principle by which the sense organ can be so saturated that it is no longer sensitive; that this is the result of both physiological and psychological factors; that Simpson underwent a sensory adaptation to the ethyl mercaptan that may have existed in the propane gas.

Generally, there are two questions brought before this court. First, whether the trial court erred in granting the judgment n. o. v., and secondly, whether it erred in granting the motion for new trial in the alternative.

There is a difference in the function of a judge when he is ruling on

a motion for a directed verdict or a judgment n. o. v. and when he passes on a motion for a new trial. Williams v. Nichols, 266 F.2d 389, 393 (4th Cir. 1959). In the former instance, it is his duty to accept the plaintiff's version as true for the purposes of the motion, notwithstanding the existence of strong testimony to the contrary; the judge is not concerned with the weight of the evidence. On the motion for new trial, however, he has wider, though not unlimited, latitude and he may set the verdict aside where it is against the weight of the evidence, or to prevent injustice. McCracken v. Richmond, F. & P. R. R., 240 F.2d 484, 488 (4th Cir. 1957). The standard applicable to consideration and disposition of a motion for a directed verdict or for a judgment n. o. v. is whether plaintiff's evidence is sufficient to support a burden, ignoring defendant's evidence. Williams v. Nichols, supra, 266 F.2d at 393.

■■■ The Iowa and federal tests of sufficiency of the evidence to support a jury verdict are substantially the same. In both there must be substantial evidence to support the verdict. Ozark Air Lines, Inc. v. Larimer, 352 F.2d 9, 11 (8th Cir. 1965). The rule is well established in Iowa as elsewhere that a party against whom a motion for a directed verdict is made is entitled to have the benefit of every legitimate inference that may properly be drawn from the evidence. Little v. Watkins Motor Lines, 256 F.2d 145, 148 (8th Cir. 1958). When the evidence, viewed most favorably from the plaintiff's standpoint, fails to establish a quantity of evidence reasonably supporting the verdict, it becomes a reviewing court's duty to reverse. Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946); Ozark Air Lines, Inc., supra, 352 F.2d at 11–12. In determining the sufficiency of the evidence to submit a case to the jury, each case must be determined on its own facts. Little v. Watkins Motor Lines, supra, 256 F.2d at 150.

The trial court in ruling on the motion for judgment n. o. v. found: that Simpson did not carry his burden of proving Skelly negligent in failing to inspect the pipes and equipment at Simpson's residence for the reason that there was no showing that the leak existed on or prior to May 11, 1962; that there was no foundation for Simpson's expert testimony and no reliance could be placed thereon; that Simpson failed to affirmatively establish freedom from contributory negligence and additionally, that he was guilty of contributory negligence as a matter of law.

■■ Negligence is a broad term not easily defined. Neither is it always actionable. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930). Actionable negligence, however, presupposes some fault or substandard of care. Ozark Air Lines v. Larimer, supra, 352 F.2d at 13. The duty or standard of care of a gas distributor in Iowa to inspect or remedy defects after notice of the possibility of a leak as to appliances which it does not own or control has not been defined by the Iowa courts.

■■■ The problem of ascertaining the law of the state on a question which has not been passed on directly at an appellate level is a difficult one. In deciding what the highest court of a state would probably hold the law to be, great weight may properly be accorded by this court to the view of the trial court. Magill v. Travelers Ins. Co., 133 F.2d 709, 713 (8th Cir. 1943). The District Court interpretation of the law will not be changed unless it is clearly demonstrated that the local law has been misapplied. Billings v. Investment Trust of Boston, 309 F.2d 681 (8th Cir. 1962). From an examination of various sources, including the trial court instructions, the Iowa gas cases, and the gas cases of surrounding states on the question of the duty of care of a distributor or seller of gas, we feel that the rule may be stated that whenever a gas company is in possession of facts that would suggest to a person of ordinary care and prudence that an appliance of a customer is leaking or is otherwise unsafe for the transportation of gas, the company has the duty to investigate, as a person of ordinary care and prudence similarly situated and handling

such a dangerous substance would do, before it continues to furnish additional gas. The duty to exercise reasonable diligence to inspect or shut off the gas supply is measured by the likelihood of the injury and only arises upon a reasonable notice of the existence of danger.[1]

The evidence of Simpson shows that the odor of gas was detected prior to May 11, 1962; that Skelly's employee was informed; that the employee made an inspection, advising no leak existed; that Simpson did not smell gas when he attempted to light the heater; that an explosion occurred; that subsequent to the explosion a leak was discovered, covered by 18 inches of dirt; that this leak was the only leak shown to exist.

A mere scintilla of evidence is not enough to raise a question for the jury on the issue of negligence and a finding of negligence must be based upon substantial evidence and not upon speculation or conjecture. Ellingson v. Kramer, 255 Iowa 1257, 125 N.W.2d 777 (1964). In order to make a jury question upon negligence when the evidence is circumstantial, it must be such as to make the theory of the causation reasonably probable, not merely possible and more probable than any other hypothesis based upon such evidence. Little v. Watkins Motor Lines, Inc., supra, 256 F.2d at 150. We feel that the direct testimony and the circumstantial evidence adduced by Simpson removed the issue from the realm of speculation and conjecture and provided a basis for the jury's finding as to the cause of the explosion and Skelly's negligence.

Simpson relies on the testimony of his expert to show facts which when taken in conjunction with other evidence affirmatively establish his freedom from contributory negligence. Under Iowa law, plaintiff in an action based upon negligence has the burden of pleading and proving freedom from contributory negligence.[2] Chicago, Burlington & Quincy R. Co. v. King, 337 F.2d 510, 514 (8th Cir. 1964). Therefore, the next question for consideration is the correctness of the trial court's rulings that the hypothetical question assumed facts not in evidence; that there was no proper foundation for the expert testimony; that the objections on that ground should have been sustained; and that its failure to do so was prejudicial to Skelly.

We feel that the Iowa rule on this question is set out in Crozier v. Lenox Mutual Ins. Ass'n., 252 Iowa 1176, 110 N.W.2d 403 (1961). Therein the court states:

"Except for the particularity referred to, supra, plaintiff's objection to the hypothetical question was general, claiming it to be a misstatement and contrary to the record, assuming facts not in the record and omitting facts bearing on the problem.

"A similar objection to a hypothetical question was made In re Estate of Telsrow, 237 Iowa 672, 681, 22 N.W.2d 792, 798. We quote from that case: 'The question was objected to, in substance, as incompetent, irrelevant, im-

---

1. See e. g.: Gas Service Co. v. Payton, 180 F.2d 505 (8th Cir. 1950); Skelly Oil Co. v. Holloway, 171 F.2d 670 (8th Cir. 1948); Williams v. Northern Nat. Gas Co., 136 F.Supp. 514 (N.D.Iowa 1955); Blackman v. Iowa Union Electric Co., 234 Iowa 859, 14 N.W.2d 721 (1944); Sternbock v. Consolidated Gas Utilities Corp., 151 Kan. 81, 98 P.2d 162 (1940); Bellefuil v. Willmar Gas Co., 234 Minn. 123, 66 N.W.2d 779 (1954); Trimbo v. Minnesota Valley Nat. Gas Co., 260 Minn. 386, 110 N.W.2d 168 (1961); Wilson v. Home Gas Co., 267 Minn. 162, 125 N.W.2d 725 (1964); Clay v. Butane Gas Corp., 151 Neb. 876, 39 N.W.2d 813 (1949); Daugherty v. Nebraska Nat. Gas Co., 173 Neb. 30, 112 N.W.2d 790 (1961); Darnell v. Panhandle Cooperative Ass'n., 175 Neb. 40, 120 N.W.2d 278 (1963); Whittington v. Nebraska Nat. Gas Co., 177 Neb. 264, 128 N.W.2d 795 (1964); Weber v. Interstate Light & Power Co., 268 Wis. 479, 68 N.W.2d 39 (1955); Webb v. Wisconsin Southern Gas Co., 27 Wis.2d 343, 134 N.W.2d 407 (1965); see also 26 A.L.R.2d 136; 72 A.L.R.2d 865.

2. This burden was subsequently removed by Chapter 430 of the 61st G.A. (1963) Section 619.17, I.C.A.

material, no proper foundation laid, contains an incomplete recitation of facts and facts not borne out by the record. At best, it is doubtful if the objection to the question is sufficiently specific. There was no objection to any particular statement in the question. It is the duty of counsel to point out the particular defect or defects in such a question so the statements objected to may be corrected or eliminated. (citations)

" 'Aside from the above, the rulings were not erroneous in the respects complained of here. While the facts stated in a hypothetical question must have support in the evidence (citation), the question need not contain all the facts shown by the evidence. (citations) Some facts which proponents complain were omitted from the question were brought out by their witnesses after the hypothetical questions were asked. It was not necessary, if indeed it were possible, to include in the question facts subsequently developed. (citations)

" 'We think the facts assumed in the hypothetical question have some support in the evidence. At least some latitude must be allowed in the choice of facts stated in such a question and the trial court has considerable discretion in ruling on an objection thereto. Contestants were entitled to frame the question according to their theory of the case, as their construction of the evidence showed the facts to be or as the jury would have a right to find them. (citations)

" 'In any event, the ruling complained of was without prejudice since the jury was fully instructed that if the facts stated in the hypothetical question were incorrect, unfair, or untrue, or did not fairly include all facts in evidence upon the subject of the inquiry, then the opinions based thereon should be disregarded. (citations)' See also Ferris v. Riley, 251 Iowa 400, 101 N.W. 2d 176." 110 N.W.2d at 407.

■ Based on the above rule, and without passing on the sufficiency of the objections made at the time of trial, we find that there was sufficient foundation for the hypothetical question and that the admission of the testimony before the jury was proper and not error. Nor was such testimony prejudicial, as the jury was instructed in accord with the above rule to give no weight or consideration to opinions based on hypothetical questions not established by the evidence.

■ Although the trial court has some latitude in allowing expert testimony or in subsequently striking such testimony from the record, we find that in the instant case, since there was no error in admitting it, there was none to cure by subsequently striking it and therefore the testimony should be permitted to stand.

The expert witness testified that sensory response and sensory acuity are heavily influenced by the state of mind of the individual; that individuals may be led to disbelieve their own sense organ; and that this is a common experience. He also testified that the odorant in the gas would permeate the air in the house, causing a sensory adaptation with respect to the olfactory nerve, and that sensory adaptation would occur within three minutes or less, depending upon physiological and psychological factors. Simpson testified that he had inspected the equipment when he first thought he detected gas; that he found no leaks; that Skelly's employee informed him that there were no leaks; that he did not smell any gas odor thereafter; that he did not smell gas at the time he attempted to light the heater; that he was in the house for more than one hour before going to the basement to light it.

■ Viewing the evidence most favorable to Simpson and giving him the benefit of every favorable inference, we find the evidence sufficient to support a jury finding that the actions of Simpson were justified as reasonable and prudent under the circumstances, considering all of the physical facts. Certainly, reasonable men could differ as to whether a sensory adaptation occurred. Simpson, therefore, has affirmatively carried his

**570**

burden of proving freedom from contributory negligence, and is not guilty of contributory negligence as a matter of law.

In ruling that Simpson had failed to affirmatively establish his freedom from contributory negligence and that in addition he was guilty of contributory negligence as a matter of law, the trial court in its memorandum followed Carstens Plumbing and Heating Co. v. Epley, 342 F.2d 830 (8th Cir. 1965), stating that the language in *Carstens* applies to these facts when the sense of smell is substituted for sight and hearing. We do not feel that the *Carstens* case, supra, is applicable.

In the *Carstens* case, the principles of railroad crossing cases were applied to a fact situation wherein a person was fatally injured by a materials hoist in a construction accident. The court said that the failure of the deceased to look had he chosen to do so, and the failure to hear, had he chosen to listen, applies whether the track is vertical or horizontal. Carstens Plumbing and Heating Co. v. Epley, supra, 342 F.2d at 835. This rule is not applicable to the sense of smell in the present fact situation. Simpson may not have been physically able to detect an odor of gas had he chosen to smell. To require him to overcome the rule in *Carstens* would be too great a burden, thus it should not be applied.

The second general issue raised on appeal is whether the trial court erred in granting in the alternative a motion for new trial. In ruling on a motion for new trial, the trial court should exercise its independent judgment after a weighing of all the evidence and any other pertinent factors in determining whether the verdict was against the clear weight of the evidence or would result in a miscarriage of justice. Thus, the case should be examined, not in the light most favorable to the plaintiff, but according to the analysis and appraisal by the trial court of the weight of all the evidence considering also any other relevant factors. Williams v. Nichols, 266 F.2d 389, 393 (4th Cir. 1959). We feel that the trial court, in granting a new trial in the alternative, properly exercised the judicial function in that regard and the ruling should therefore stand.

For the reasons stated above, the ruling on the motion for judgment notwithstanding the verdict is hereby reversed, but the verdict is not reinstated, and the ruling on the motion for new trial is hereby affirmed and the cause remanded in accordance herewith.

VAN OOSTERHOUT, Circuit Judge (dissenting in part).

I respectfully dissent from the majority opinion to the extent that it holds the trial court erred in sustaining defendant's motion for judgment n. o. v. I have no quarrel with the basic legal principles set out in the majority opinion. The difficulty arises in the application of the law to the facts. I would affirm upon this issue upon the ground that the plaintiff has failed to establish defendant was guilty of any negligence proximately causing plaintiff's injuries. I agree with the reasoning set forth in the trial court's unreported memorandum opinion. In my view there is no substantial evidence to support a finding that a leak existed in the tee-joint (which was not installed by the defendant) on May 11, the date of the alleged inspection. The only gas odor detection by plaintiff occurred three or four weeks before May 11. On that occasion plaintiff lit the heater without incident. While there is testimony of sensory adjustment, the expert testimony is that the olfactory sense is restored upon leaving the exposed area. Plaintiff was in and out of the house many times after May 11 and there is no testimony that he smelled gas odor on any subsequent occasion. It is undisputed that the gas was properly treated to give off an offensive, readily detectible odor.

There is no testimony as to the precise nature of the break discovered subsequent to the accident nor is there any expert testimony as to whether the break appeared to be new or old. In my opinion, there is neither direct nor adequate circumstantial evidence to support a find-

ing that the break in the pipe existed on May 11, the date of the inspection.

I would affirm the judgment of the trial court sustaining the motion for judgment n. o. v. and dismissing the complaint.

I concur with the majority view that the defendant is entitled to a new trial.