## HUTCHINSON and others *v.* GREEN and others.

*(Circuit Court, E. D. Missouri.* April 5, 1881.)

1. INJUNCTION—INTERFERENCE WITH CONTROL OF PROPERTY IN POSSESSION OF STATE COURT.

No injunction will be granted by a United States court to interfere with the possession, control, or disposition of property which is in the hands of a state court of co-ordinate jurisdiction.

2. RECEIVER—POSSESSION OF STATE COURT.

The possession of a receiver appointed by a state court is the possession of the court itself, and the disposition of the property by the receiver is a matter to be ordered by the state court, and will not be interfered with by a United States court by injunction.

3. SAME—FRAUDULENT ASSIGNMENT—INJUNCTION.

Where a state court has appointed a receiver of the property of a corporation, and a fraudulent assignment has been subsequently made of the same, a United States court will not enjoin the assignee from receiving such corporate property from the receiver, in case the state court having control thereof orders it to be turned over to him.

In Equity.

*E. T. Allen* and *J. O. Broadhead,* for plaintiffs.

*James Taussig* and *I. A. Madill,* for defendants.

TREAT, D. J. The plaintiffs, citizens of Iowa, bring this suit in behalf of themselves and other stockholders who may join against the defendant corporation, of which they are stockholders, and the assignee of said corporation. The purpose of the suit is to have the assignment made by the corporation, through its then corporate authorities, under the facts and circumstances alleged, adjudged void; and in addition thereto it is prayed that a receiver may be appointed and an injunction against the assignee granted. The present motion is for a provisional injunction against the assignee. It appears that a petition pursuant to the statutes of Missouri was filed in the state circuit court for the removal of certain directors and the president of the defendant corporation, and such proceedings were thereupon had that said removals were decreed, and a special election ordered to fill the vacancies thus created in the board of directors. At the same time said court appointed a receiver of the corporate prop-

erty and effects.    The election, as ordered, was held and confirmed by the court, and a meeting, on due notice of the board as thus constituted, was held December 13, 1880, at which a new president was chosen, etc.    Notice was duly given thereafter for the annual meeting to be held on January 19, 1881.

It is averred that for fraudulent purposes a meeting of the board was held, and, by a vote of the majority against the protest of the minority, and against the wishes of a majority of the stockholders, an assignment of the corporate effects, etc., was made January 15, 1881,—four days before the annual meeting.    The assignee has given bond under the state statute, and has proceeded, and is now proceeding, to execute the duties imposed upon him by law, subject to the supervision of the state court.

At the annual meeting, January 19, 1881, an election of directors was had, a new president chosen, said assignment repudiated, etc., and the new board instructed to protect the interests of the corporation in such manner as might be deemed advisable.

It is averred that, on investigation made, said corporation has been found solvent, and able, by the administration of its own affairs, not only to meet its obligations, but have a large surplus.    The new board authorized and requested its president to proceed in the state court to have the receiver turn over to the corporation its property in his hands on payment of expenses, etc., whereupon the president did so proceed, his petition therefor being accompanied by the written consent of 96 per cent. of the creditors.    Said petition was opposed by the assignee and denied by the court.

It is alleged that pursuant to the vote of the stockholders the president had demanded of the assignee that he should reconvey the property to the corporation; that said assignee refused so to do; and that on March 25, 1881, the plaintiffs demanded of said president that "said corporation should at once institute the proper proceedings to enjoin" said assignee from "in any manner interfering with the property and assets of said corporation under said deed of assignment, and to set aside and cancel said deed of assignment, and that

thereupon said Lowery [the president] refused to take further steps," etc.

These latter averments are evidently designed to bring the case within recognized rules as to suits by stockholders when the proper corporate authorities refuse to act in the name of the corporation or permit the name of the corporation to be used as party litigant. Although the averment may be subject to criticism as to its sufficiency, yet as it might be amended, possibly, consistent with facts justifying this form of action, it is thought, for present purposes, advisable to treat the averments as if fully complying with the equity rule.

The allegations of the bill have been thus summarized in order that it may appear with sufficient clearness what the demand is, why the jurisdiction of this court is invoked, and what is the condition of the record in the state court. The bill proceeds as follows: "And your orators, further complaining, say [etc.] that said St. Louis circuit court, in due course of procedure under the provisions of the statutes of the state of Missouri in that behalf, *is about to discharge the said Clubb as receiver of the assets of said corporation defendant, and direct said receiver to turn over said property to the party entitled to receive the same; and that said Charles Green, defendant herein, claims the right and proposes to receive said property from said receiver, and to sell and dispose of the same under said deed of assignment.*" The bill then states that irreparable mischief to the plaintiffs may follow if the assignee proceeds under the assignment.

The prayer is for an injunction to restrain said assignee "from in any manner interfering with any of the property of said corporation; that the assignment may be declared void; that the title of the property be decreed to be in the corporation; that the property be turned over accordingly to the corporation; and that some one may be appointed by this court to demand and receive from said Clubb, receiver aforesaid, when he, the said Clubb, shall be directed by the said St. Louis circuit court to turn over the said property of said defendant corporation, now in his possession, such property, and the same to hold, subject to the order and decrees of this

court," etc. Does not the foregoing analysis of the bill, with its prayers for relief, show most distinctly that this court is asked to enjoin the proceedings of a state court which has custody of the property in dispute, and is proceeding to determine the rights of the several parties in interest? At present the state court has custody, but it is apprehended that it is about to turn over the possession and management of said property from the receiver to a duly-qualified assignee under the state law, over whom it has full supervision. It is not necessary to decide the bald question whether a state assignee who has given bond, etc., in a state court can be interfered with by injunction from this court.

The force of decisions read from the United States Reports is fully appreciated, and the clear distinction observed between judgments in federal courts against state assignees, administrators, etc., and the modes of enforcing said judgments, which, when rendered, are against them in their representative capacity, payable out of assets in their hands. Whatever may be the apparent doubt arising from the cases cited, it seems clear that the case before this court involves no such difficulties; for it is disclosed in the bill that its purpose is to interfere directly with pending proceedings in the state court —practically, to direct what order it shall make as to the future custody or control of property now in the possession of its receiver; or, in other words, that its judgment shall be restricted, in a certain way, so that it cannot adjudge what, to it, law and right may seem to demand. An analysis of the authorities cited will show that in no well-considered case has a United States court ever issued an injunction, directly or indirectly, (except in bankruptcy matters,) to restrain proceedings pending in a state court; nor has it respected any injunction or other mode of interference with its jurisdiction. There has seldom arisen any conflict of jurisdiction since the organization of the United States government, because both federal and state courts have, with rare exceptions, observed the obvious rule of comity, and the federal courts have strictly complied with the provisions of the act of 1793, prohibiting injunctions of the kind claimed here.

It is true, there has been some apparent diversity of views as to concurrent jurisdiction in certain classes of cases, as of administrators, etc., settling estates under local laws. It never has been disputed that a non-resident creditor or distributee could maintain suit against an administrator; but when judgment was had, it had to take its place under the classifications of demands by the local law, instead of being enforced by execution against the administrator or the assets in his hands.

The case of *Toudley* v. *Lavender*, 21 Wall. 276, sufficiently explains the rule and the reason on which it rests. The following cases, cited by the respective counsel, divide themselves into two classes: (1) Will a federal court interfere by injunction with proceedings in a state court? Under this head it must necessarily be determined whether such matters as are here sought to be enjoined are within the purview of the rule. (2) Whether, despite proceedings pending in a state court, a non-resident cannot sue in a federal court, as in probate matters, and obtain judgment against an administrator, to be collected as stated in 21 Wall., *supra*.

The first proposition is the only one now before this court. A provisional injunction is asked under the facts heretofore recited to prevent the assignee from taking possession of or interfering with the corporate property, even if the state court should, in discharging its receiver, so order. That property is now *in custodia legis*. What the action of the state court may be is not disclosed, and cannot now be known. It remains for that tribunal, without interference from this court, to make such final orders with respect thereto as, in its judgment, the law and facts require. The embarrassment under which parties may labor, if this court does not usurp jurisdiction, are far less than if conflicts of jurisdiction arise. It may be that great loss and injury will result if the corporation is not permitted to proceed with its business affecting the navigation of the upper Mississippi, and that, as urged, this important enterprise may be wrecked, to the detriment of all parties in interest, unless this court intervenes by injunction. That argument cannot prevail against the prohibition

of the statute; nor is it seen how the corporation or plaintiffs would be profited pending this litigation if the assignee is enjoined from acting. It must suffice that, on the record, it sufficiently appears that this court has no power to grant the provisional injunction.

The following are the principal cases cited by counsel, which have been fully examined and considered: *Diggs v. Walcott*, 4 Cranch, 179; *Watson v. Jones*, 13 Wall. 719; *Haines v. Carpenter*, 91 U. S. 254; *Chaffin v. St. Louis*, 4 Dillon, 19; *Dial v. Reynolds*, 96 U. S. 340; High on Injunctions, 109, 110, 111; *Erwin v. Emory*, 7 How. 172; *Suydam v. Boyd*, 14 Pet. 67; *Union Bank v. Jolly*, 18 How. 503; *Green v. Creighton*, 23 How. 10; *Payne v. Hook*, 7 Wall. 425; *Toudley v. Lavender*, 21 Wall. 283; *Andrews v. Smith*, 5 FED. REP. 883; *January v. Powell*, 29 Mo. 241.

MCCRARY, C. J., (*concurring*.) The rule is that no injunction shall be granted by any court to interfere with the possession, control, or disposition of property which is in the hands of another court of co-ordinate jurisdiction. The reason for the rule is that its disregard would lead to conflicts between courts of equal authority, and recognizing no common arbiter, which conflicts might lead to the most serious and disastrous consequences. The great importance of the strict observance of this rule in the administration of justice in our state and federal courts has always been recognized in both forums, and for reasons which at once suggest themselves as very cogent.

I am disposed, so far as I am concerned, to uphold it fully, and, even in cases of doubt, to lean towards the adoption of that view which cannot possibly lead to conflict. The *fact* in the present case is that the property is now in the custody of the state courts. The possession of the receiver is the possession of the court itself, and the disposition of the property by the receiver is a matter to be ordered by the court, which has a perfect right to dispose of it as it pleases. That court has control not only of the property, but also of the receiver and the assignee, and in the exercise of the un-

doubted authority it may order the property to be delivered by the receiver to the assignee. It is, indeed, manifest that the apprehension on the part of complainants that the state court will so order, was the moving cause of the institution of the present suit. It appears from the record before us that in the course of the proceedings in the state court, the corporation, the receiver, and the assignee all being present in court and fully heard, that court decided that it is its duty to determine to whom the property shall be delivered when the receiver shall be discharged. In this I have no doubt that court is right. It has jurisdiction of the property and of the parties claiming it. It may be that the assignee is not an officer of the state court in the same sense as if appointed by the court; but it is manifest that, from the moment an assignment is made under the state laws, the assignee is for many purposes subject to the orders of the state court. This is, however, not very material here, for it appears that the assignee has actually appeared in the state court to claim the property, and is now claiming it in that forum, and that the state court has decided that as the record now stands in that court he is entitled to it. It would certainly be a most unseemly interference on our part to attempt at this stage of the proceeding to take the control of the property out of the hands of that court. Suppose we should, by a preliminary injunction, restrain the assignee from acting under the assignment and from taking the property, what right or authority have we to forbid the state court to order the property delivered to the assignee? It is the plain duty of that court, when it comes to discharge its receiver, to determine and direct him as to the disposition of the property in his hands. How can we enjoin the assignee from receiving the property without interfering with a disposition of it which the state court may make and has a perfect right to make in the exercise of its prior jurisdiction? We cannot, of course, say in advance that the state court will or will not order the property delivered to the assignee. If it has jurisdiction to so order, and *may* so order, that is enough. We must recognize and respect the right of the court to deter-

mine the question either way according to its judgment, and not according to ours. If we interfere to determine it in advance, by preliminary injunction, we are plainly attempting to control the action of that court. It is no answer to say that we do not enjoin the court, but only the assignee. It may often happen that an injunction to restrain public officers, or private persons, if granted and enforced, will, in effect, tie the hands of the court under whose orders they are to act. If, for example, a party subject to the jurisdiction of a state court is enjoined by a federal court from obeying the orders of the former, this is an interference with the court as well as with the individual. And the difficulty is not lessened—it is rather increased—by issuing the injunction in advance of the order of the state court, but after it has possession of the subject.

It follows that application for relief by injunction, upon the grounds stated in the bill, must be addressed to the state court, which has possession of the property, control over the several claimants, and power either to order or forbid delivery to the assignee.