People of the State of Illinois ex rel. Richard G. Hershey, Director of the Department of Insurance of the State of Illinois, Plaintiff-Appellee, v. Cosmopolitan Insurance Company, Defendant-Appellee. Shirley Diebold, as Trustee Under Trust Agreement Dated October 25, 1960, and Known as Trust #7143, Petitioner-Appellant.

Gen. No. 51,323.

First District.

November 29, 1967.

Rehearing denied January 5, 1968.

Milton K. Joseph and Louis D. Schmalzer, of Chicago, for appellant.

Jules Dashow, of Chicago (Ira J. Friedman, of counsel), for appellee.

MR. PRESIDING JUSTICE CRAVEN delivered the opinion of the court.

The Director of Insurance instituted proceedings for the rehabilitation of an insolvent insurance company. Shirley Diebold, appellant, filed a petition in that rehabilitation proceedings for an order that the court-appointed rehabilitator pay to her a sum of money which the rehabilitator had received from the reinsurer of the insolvent company. This appeal is from an order denying the relief sought by the petition.

In December of 1960, the Cosmopolitan Insurance Company, hereinafter referred to as the "insurer," entered into a contract, entitled "Pro Rata Reinsurance," with Hardware Dealers Mutual Fire Insurance Company, hereinafter referred to as the "reinsurer." By the terms of that contract, it was agreed that the insurer could cede to the reinsurer certain risks over and above a specified figure that was required to be retained by the insurer. This contract of reinsurance contained many provisions as to its operation between the parties—the insurer and reinsurer. Provision was made for the division of premium income in proportion to the amount of risk assumed after the deduction of commissions paid to the insurer for its administrative expenses. Loss investigation expenses were prorated as was salvage income. The contract contained provisions relative to accounting between the parties, underwriting was left to the insurer, and finally the contract contained this provision with reference to the handling of claims in the event of the insolvency of the insurer:

226

"In the event of the Insurer's insolvency, any claim under this contract shall be payable without diminution by the Reinsurer to the liquidator, receiver or statutory successor of the Insurer on the basis of the claims allowed against the insolvent Insurer by any court of competent jurisdiction, or any justice or judge thereof, or by any receiver having authority to determine and allow claims. The Insurer's liquidator, receiver or statutory successor shall give the Reinsurer written notice of the pendency of any claims against the Insurer, involved in the claim under this contract, within a reasonable time after each of such claims is filed in the Insurer's insolvency proceeding. During the pendency of each of such claims on the insolvent Insurer, the Reinsurer may investigate such claim and interpose, at the Reinsurer's own expense, in the proceeding where the claim is to be adjudicated any defense which it may deem available to the Insurer or its liquidator, receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable against the insolvent Insurer as part of the expense of liquidation to the extent of a proportionate share of the benefits which may accrue to the Insurer solely as the result of the defense undertaken by the Reinsurer."

In August of 1961, the insurer issued its fire insurance policy to the appellant on certain premises, the policy being in the principal amount of $65,000. Under the terms of the reinsurance contract, this risk was ceded to the reinsurer.

In January of 1963, a loss occurred as a consequence of a fire. Proof of loss was filed and in February of 1963, the loss was determined to be in the sum of some $62,500. In April of 1963, the petition for rehabilitation was filed in the circuit court and the rehabilitator was appointed in

May. Thereafter, the reinsurer paid to the rehabilitator some $58,000 attributable to the claim of the petitioner.

The petition asserted that the rehabilitator was a mere collecting agent or conduit for the petitioner or in the alternative that the petitioner was a third-party beneficiary and entitled to the proceeds of the reinsurance, it being the contention of the petitioner that the reinsurance contract was in substance not reinsurance but coinsurance.

██ ██ It is, of course, true that the construction of this agreement is not to be determined by the name or caption of the agreement, but rather from the terms and conditions of the contract. Nomenclature, however, is important. Appleman, in his work on "Insurance," defines "reinsurance" as follows:

> "Reinsurance, to an insurance lawyer, means one thing only—the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss. The true reinsurer is merely an insurance company or underwriter which deals only with other insurance companies as its policyholders." 13 Appleman, Insurance Law and Practice, sec 7681, at 433, et seq.

Although no Illinois case has been suggested which is specifically determinative of the issue here, running through the Illinois cases is language in accord with this definition of "reinsurance." See Gill v. Peerless Cas. Co., 18 Ill App2d 338, 152 NE2d 210 (2nd Dist 1958) ; Weil v. Federal Life Ins. Co., 264 Ill 425, 106 NE 246 (1914).

The petitioner relies heavily on two Missouri opinions, seemingly at odds with the accepted view of reinsurance. In Homan v. Employers Reinsurance Corp., 345 Mo 650, 136 SW2d 289, the court did use some language that seemed to equate coinsurance and reinsurance. In that case, however, there were procedural complications and facts which might have given rise to a form of estoppel as to the reinsurer. The second Missouri case, First Nat. Bank of Kansas City v. Higgins (Mo), 357 SW2d 139 (1962), gives some comfort to the petitioner. That case was by a divided court, and we find ourselves in agreement with the dissenting opinion which not only criticized the holding in the case then under consideration but was equally critical of the Homan opinion. The dissenting opinion made the point that the view of Missouri was at odds with other decisions, and in the dissent it was stated:

> "In other jurisdictions a similar article and insolvency clause has been held to mean just what it says, that in the event of insolvency the amount due under the policy shall be paid to the liquidator. Melco Sys. v. Receivers of Trans-America Ins. Co., 268 Ala 152, 105 S2d 46; Stickel v. Excess Ins. Co. of America, 136 Ohio St 49, 23 NE2d 841; Greenman v. General Reinsurance Corp., 237 App Div 648, 262 NYS 570, affd 262 NY 701."

This contract appears to us to be clear and unambiguous. It needs no construction. It is an agreement whereby an insurance company reinsured risks that it had previously underwritten. The object and purpose in ceding part of these risks was to protect itself. By this contract an insurance company purchased insurance. A loss payable to it in the event of insolvency became payable to the liquidator. The language of the policy on this point could not be more clear nor concise. As we said in

Bartulis v. Metropolitan Life Ins. Co., 72 Ill App2d 267, 271, 218 NE2d 225, 226 (4th Dist 1966):

> ". . . construction does not degenerate into a perversion of plain language to create an ambiguity where none exists or to father a contract obligation where none is stated or reasonably implied."

The insolvency of an insurance company casts burdens upon its insureds, claimants against its insureds and, if a stock company, against its stockholders. The consequences to those injured are severe. This court cannot, however, under the guise of construction, seek to lessen the injury of one or one of a group at the expense of other injured persons by reason of the insolvency, whether as creditors or in some other capacity. Having concluded that the reinsurance contract here involved provided no benefit to the petitioner and that it was a contract providing for the payment, in the event of loss, under the contract to the receiver or rehabilitator in the event of insolvency of the insurer, the circuit court properly determined that the petitioner had no interest in the proceeds paid by the reinsurer. The judgment of the circuit court of Cook County must be and the same is affirmed.

Affirmed.

SMITH and TRAPP, JJ., concur.