**AMERICAN CAST IRON PIPE COMPANY, a Georgia corporation, Plaintiff,**

v.

**STATESMAN INSURANCE COMPANY, an Iowa corporation, et al., Defendants.**

**No. 4–71 Civ. 463.**

United States District Court, D. Minnesota, Fourth Division.

June 12, 1972.

Culhane & Culhane by Michael L. Culhane, Minneapolis, Minn., for plaintiff.

Briggs & Morgan by James W. Bowers, St. Paul, Minn., for defendants.

NEVILLE, District Judge.

The question presented here is: May a materialman who supplied pipe to a now bankrupt general contractor, and whose surety on its contractor's bond, i. e., Home Owners Insurance Company of Illinois, also is insolvent and the subject of a receivership in the state court of Illinois, prosecute its claim for $146,166.-26 directly against three reinsurance companies, each of whom under a reinsurance treaty and contract reinsured a portion of the face amount of the contractor's bond issued by Home Owners Insurance Company. This court holds that such an action against the reinsurers will not lie.

Plaintiff incorporated in Georgia and has its principal place of business in states other than Iowa, Illinois and Ohio. Defendants Statesman Insurance Company, Allstate Insurance Company and Nationwide Mutual Insurance Company are corporations organized and having their principal places of businesses in the States of Iowa, Illinois and Ohio respectively.

Defendants have moved the court to dismiss plaintiff's complaint for want of subject matter jurisdiction over the *res* in this court, and for failure to join an out-of-state indispensable party as to whom this court has no power to order or compel service of process.

Plaintiff seeks to satisfy its claim by suit directly against the defendant reinsurers to recover a *res* it alleges never passed into the hands of the liquidator of Home Owners, duly appointed April 8, 1971 by the Circuit Court of Sangomon County, Illinois. The defendants contend that such a suit can be commenced, if at all, only against the liquidator of the insolvent Home Owners, since the assets in question belong to the insolvent company and thus are in the possession and control of the liquidator. There are two questions presented. First, whether the rights of Home Owners against the defendant reinsurers are owned by the duly appointed liquidator, and second, if the Illinois court has taken *in rem* jurisdiction over the *res*, i. e., the assets of Home Owners, whether this court may ignore such and contest with that court for jurisdiction in the premises, particularly without making the liquidator a party to the suit.

The Illinois Liquidation Court on April 8, 1971 issued an injunction in aid of its *in rem* jurisdiction applying to "HOME OWNERS INSURANCE COMPANY, its officers, directors, agents, employees, including policyholders and all reinsurers of HOME OWNERS COMPANY." The injunction stated *inter alia*:

"(b) That the Liquidator has the right, title and interest in all funds recoverable under treaties and agreements of reinsurance heretofore entered into by HOME OWNERS INSURANCE COMPANY as the ceding insurer and all reinsurance companies involved with HOME OWNERS INSURANCE COMPANY be and are hereby restrained from making any settlements with any claimant other than the Liquidator.

. . . . . .

(f) That . . . all persons asserting claims against such policyholders be and are hereby restrained and enjoined from instituting or pursuing any action or proceeding in any court . . . of any other State or of the United States, which seeks in any way, directly or indirectly to contest or interfere with the Liquidator's exclusive right, . . . to funds recoverable under treaties and agreements of reinsurance . . . ..

. . . . . .

(k) That this Honorable Court shall retain jurisdiction of this cause for the purpose of granting such other and further relief as the policyholders and creditors may require."

All of the defendants' reinsurance contracts are identical, except for the dates and names of parties. The court will thus only quote the pertinent sections of the Allstate contract, and the General Reinsurance agreement which latter applies as to all reinsurers:

## "ARTICLE XIV

### INSOLVENCY CLAUSE:

In the event of the insolvency of the Company, the Reinsurance under this Agreement shall be payable by the Reinsurer to the Company, or to its liquidator, receiver or statutory successor on the basis of the liability of the company under the policy or policies reinsured without diminution because of the insolvency of the Company."

The plaintiff contends first that there is no *res* in the possession of or under the control of the Liquidator because under Article 9 of the General Reinsurance Agreement,[1] between Home Owners and

---

1. The General Reinsurance Contract is a part of the agreement between Home Owners and binds it and each reinsurer.

"8. Management of Claim Matters: Unless otherwise agreed, the Reinsured shall take charge of all claim matters arising under the Bond or Policy; determine its liability and the amount thereof; compromise, settle or defend any claim or suit, and take such other action, not involving the extension of credit or advancement of money, as it may deem advisable. All claim settlements and any other action by the Reinsured within the terms of this Agreement shall be final, conclusive and un-

the reinsurers, the provision for claims against the reinsurers is predicated on the filing of a claim with the liquidator. Therefore, because in the instant case no fund has been paid to the liquidator, and plaintiff has not filed a claim with the liquidator, there is no *res* in Illinois, and hence no *in rem* jurisdiction in the Illinois court.

Second, plaintiff contends defendants are estopped. The present action was first commenced in the State court on August 18, 1971, over four months after the Illinois Court issued its injunctive order. It was removed to this court on September 10, 1971. Plaintiff asserts that an earlier action was commenced by the same plaintiff in the State Court against Home Owners and others (but not these present reinsuring defendants) prior to the appointment of the liquidator of Home Owners, and that the present defendants assumed the defense of that action; therefore the liquidator is prevented from claiming a right to the *res* because the reinsurers are estopped from denying liability. Schmidt v. National Auto. & Cas. Ins. Co., 207 F.2d 301 (8th Cir. 1953).

Finally, plaintiff contends that it has a direct cause of action against the reinsurers in any event. Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289 (1939); First National Bank of Kansas City v. Higgins, Mo., 357 S.W.2d 139 (1962).

The court is not persuaded by plaintiff's arguments.

conditionally binding upon the Reinsurer. Consultation with the Reinsurer regarding any such matters shall not affect the Reinsured's exclusive rights under this Agreement. However, no settlement by the Reinsured shall preclude the Reinsurer from showing that the alleged liability for loss under the Bond or Policy, or any part thereof, exists or existed under some other bond or policy issued at any time by the Reinsured.

9. Management of Claims in Case of Insolvency: Should a receiver or other official be appointed for the conservation, liquidation, rehabilitation or reorganization of the Reinsured's affairs, such receiver or other official shall give the Reinsurer written notice of the pendency of every claim concerned with the Bond or Policy within a reasonable time after such claim is filed in the insolvency proceeding. During such pendency, the Reinsurer may investigate such claim and interpose in the proceeding where it is to be adjudicated any defense which the Reinsurer may deem available to the Reinsured or to such receiver or other official. . . . Regardless of Section 8 hereof, no compromise or settlement of such claim, nor any determination of liability made by or at the instance of such receiver or other official shall be binding on the Reinsurer, if made before the Reinsurer has had a reasonable time, following receipt of such written notice, in which to exercise its rights, as aforesaid.

. . .

11. Settlement by Reinsurer: The Reinsurer's share of all loss, interest, costs and expenses shall be paid to the Reinsured upon proof of the payment of such items by the Reinsured, and upon delivery to the Reinsurer of copies of all essential documents (the originals of which in the possession of the Reinsured may be inspected by the Reinsurer) concerned with the same and with the payment thereof. However, the Reinsured, by giving the Reinsurer not less than forty-eight hours' written notice of its intention to pay the loss on a certain date, and designating the person to whom payment shall be made, may require the Reinsured to pay its share of such loss by such date either to such person or to the Reinsured, as the Reinsurer may elect. Whenever any loss under the Bond or Policy shall be settled, wholly or in part, through the issuance by the Reinsured of a lost instrument bond or a lost instrument letter of indemnity, the Reinsurer shall participate proportionately in the Reinsured's liability under such lost instrument bond or letter of indemnity.

Regardless of the provisions of this Section, but subject as a condition precedent to the provisions of Section 9, if a receiver or other official should be appointed for the conservation, liquidation, rehabilitation or reorganization of the Reinsured's affairs, the reinsurance shall be payable on the basis of the Reinsured's liability under the Bond or Policy, without diminution because of the Reinsured's insolvency."

■ First, effective as of January 1, 1968 there was a written and signed contract between Home Owners and Allstate and all other reinsurers which specifically states that "In the event of insolvency of the company, the reinsurance under this Agreement shall be payable by the Reinsurer to the . . . liquidator." This court holds that the contract is controlling regarding insolvency proceedings, and the plaintiff is not a third-party beneficiary, but is at best an incidental beneficiary of the reinsurers' contracts to Home Owners. While it may be true that property rights not owned by Home Owners at the time of its liquidation do not pass to the liquidator, the contracts negate plaintiff's contention that before the liquidator was appointed, plaintiff had a prior right to the fund so that such never became a part of the receivership or liquidation proceedings. See also paragraph 11 of the General Reinsurance Contract quoted in footnote 1 above, which states that "The Reinsurer's share of all loss, interest, costs and expenses shall be *paid to the Reinsured.* . . . [Emphasis added.]

In this diversity case, Minnesota law applies. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Illinois and Minnesota are "reciprocal" states in connection with liquidation of insurance companies, and have statutes establishing a joint policy that creditors from both states shall share equally in the insolvent insuror's general assets in both states. (Minn.Stats. 60B.03, Subd. 10; 60B.60 Subd. 1; Smith-Hurd, Ill.Stats.Ann., Ch. 73, § 833.1(1), § 833.10). Under the statutes of both states, therefore, the amount and priority of claims is governed by the order of the domiciliary state. Minn.Stat. 60B.60(1), Minn.Stat. 60B.-57, 60B.58. Minnesota would therefore look to the law of Illinois to determine the relative rights to Home Owner's assets as between plaintiff and Home Owner's other creditors.

On appeal by a policyholder from an adverse ruling in the liquidation court, an Illinois Court dealing with an insolvency clause almost identical to the provisions in the case at bar, held that the reinsurance proceeds belonged to the creditors rather than the policyholder, and cited the *Higgins, supra,* dissent as controlling:

"In other jurisdictions a similar article and insolvency clause has been held to mean just what it says, that in the event of insolvency the amount due under the policy shall be paid to the liquidator. Melco System v. Receivers of Trans-America Ins. Co., 268 Ala. 152, 105 So.2d 43, 46; Stickel v. Excess Ins. Co. of America, 136 Ohio St. 49, 23 N.E.2d 839, 841; Greenman v. General Reinsurance Corp., 237 App.Div. 648, 262 N.Y.S. 569, 570, aff'd 262 N.Y. 701, 188 N.E. 128."

See People ex rel. Hersey v. Cosmopolitan Ins. Co., 89 Ill.App.2d 225, 233 N.E. 2d 90, 92, 93 (1967). Furthermore, at page 93 that court made a statement in which this court concurs:

"This contract appears to us to be clear and unambiguous. It needs no construction. It is an agreement whereby an insurance company reinsured risks that it had previously underwritten. The object and purpose in ceding part of these risks was to protect itself. By this contract an insurance company purchased insurance. A loss payable to it in the event of insolvency became payable to the liquidator. The language of the policy on this point could not be more clear nor concise."

■ In answer to plaintiff's second contention, namely estoppel, *Schmidt, supra,* 207 F.2d at page 304 merely stands for the proposition that when an insuror, obligated to provide its policyholder a defense, without reservation of rights does defend, it will be estopped from denying coverage after adverse judgment where the policyholder relying on the defense was prejudiced. In the instant case, however, as to the previously filed suit in state court plaintiff was not a policyholder being sued and thus not prejudiced by any defense or lack there-

of. Also paragraph 8 of the General Reinsurance Agreement quoted in footnote 1 specifically states that the defendants, reinsurers, had no contract obligation to provide any defense for Home Owners. Finally, there is no evidence in any event that the present defendants ever assumed the defense in the original suit, and an affidavit submitted by counsel categorically denies that in the original state court proceedings he was ever representing the reinsuring defendants.

As to plaintiff's third contention, reliance on the *Homan* and *Higgins* cases *supra,* it is to be noted that neither involved a foreign court with prior *in rem* jurisdiction over reinsurance proceeds.

The law of Minnesota which applies via *Erie,* concerning reinsurance, is quite clear and is as follows:

(1) In re Estate of Moebius, 231 Minn. 219, 224, 43 N.W.2d 104, 108 (1950):

"Reinsurance is a contract of indemnity whereby the reinsurer agrees to pay the insurer losses sustained by it under its contracts of insurance *and is solely for the benefit of the insurer.* There is no privity of contract between the insured and the insurer's reinsurer." [Emphasis added]

(2) Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 40, 57 N.W. 314 (1893):

"Reinsurance is a mere contract of indemnity, in which an insurer reinsures risks in another company. In such a contract the policy holders have no concern, are not the parties for whose benefit the contract of reinsurance is made, and they cannot, therefore, sue thereon."

No claim is made here, and it is difficult to conceive in any event, that plaintiff ever relied upon, or for that matter even knew of, the defendants' reinsurance. It is not in privity, and is in no sense a third party beneficiary of the reinsurance contracts.

Persuasive is Fontenot v. Marquette Casualty Co., 247 So.2d 572, 578 (La. 1971), where the Louisiana Supreme Court opined that Missouri is the only state "afford[ing] a direct action against the reinsurer upon the insolvency of the reinsured," and cited numerous cases to the contrary:

"... Gill v. Blackhawk Mutual Insurance Company, 18 Ill.App.2d 338, 152 N.E.2d 210 (1958); People ex rel. Hersey v. Cosmopolitan Insurance Company, 89 Ill.App.2d 225, 233 N.E. 2d 90 (1967); Crozier v. Lenox Mutual Insurance Association, 252 Iowa 1176, 110 N.W.2d 403 (1961); Winneshiek Mutual Insurance Association v. Roach, 257 Iowa 354, 132 N.W.2d 436 (1965); Appeal of Schunk, 231 Minn. 219, 43 N.W.2d 104 (1950)."

A discussion of the definition of, or differences between, the terms liability and loss is not germane here in view of the explicit provisions of the contracts above quoted.

Finally, the court is persuaded that the injunction issued by the Illinois court restraining Home Owner's reinsurance companies (including defendants here) from making any settlements with or payments to any claimant other than the Home Owner's liquidator must be given full faith and credit. Janak v. Allstate Ins. Co., 319 F.Supp. 215 (W. D.Wis.1970).

If plaintiff believes that the liquidator had no right to the *res* in the first instance, or the court to enter the injunctive order, then it should go to that court and present its preference argument. As the Supreme Court stated in Lion Bonding and Surety Co. v. Karatz, 262 U.S. 77, 90, 43 S.Ct. 480, 485, 67 L. Ed. 871 (1923):

"... But, if the legality of the state court's action was to be questioned, it could be done only by laying the proper foundation through appropriate proceedings in that court. Covell v. Heyman, 111 U.S. 176, 179, 4 S. Ct. 355, 28 L.Ed. 390; Byers v. McAuley, 149 U.S. 608, 614, 13 S.Ct. 906, 37 L.Ed. 867. Compare Laing v. Rigney, 160 U.S. 531, 16 S.Ct. 366, 40 L.

Ed. 525; Metcalf v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122; Pickens v. Roy, 187 U.S. 177, 23 S.Ct. 78, 47 L.Ed. 128; Murphy v. John Hofman Co., 211 U.S. 562, 569, 29 S.Ct. 154, 53 L.Ed. 327. If such action had been taken and relief had been denied there, resort could then have been had to appellate proceedings. Wiswall v. Sampson, 14 How. 52, 14 L.Ed. 322. But the judgment of the state court, which had possession of the *res*, could not be set aside by a collateral attack in the federal courts. Mutual Reserve Fund Life Association v. Phelps, 190 U.S. 147, 159, 160, 23 S.Ct. 707, 47 L. Ed. 987. Nor could it be ignored. Shields v. Coleman, 157 U.S. 168, 15 S.Ct. 570, 39 L.Ed. 660."

See also Genecov v. Wine, 109 F.2d 265, 267 (8th Cir. 1940), which states:

". . . The rule is that when a court of competent jurisdiction has taken possession of property through its officers, that property is withdrawn from the jurisdiction of all other courts, which, although having concurrent jurisdiction, may not disturb that possession; and that the court which originally acquires jurisdiction is competent to hear and determine all questions respecting title, possession and control of the property. This rule applies, although the court, through its receiver, has not secured actual physical possession of the property of the debtor."

Assuming that the liquidation court does have actual or constructive possession of the *res* whether legally or illegally, the problem becomes whether in any circumstances this court lacks jurisdiction because of an earlier *in rem* jurisdiction having been assumed by an Illinois Court.

This same court has already stated that there is a "strong federal policy against interference with state court proceedings, including receiverships." Exchange National Bank of Chicago v. Abramson, 295 F.Supp. 87, 92, 93 (D.

Minn.1968). At pages 92, 93 this court also cited language from an earlier decision:

" 'As applied in receivership cases, the rule is that Federal courts will not interfere with state court custody of property. Hutchinson v. Green, C.C., [8 Cir.] 6 F. 833 (1881); National Cancer Hospital of America v. Webster, 251 F.2d 466 (2nd Cir.1958). This rule is based not only on the statutory mandate which is itself merely a codification of the concept of comity, but also on a recognition of the very nature of the federal system. Thus the possession is the possession of the court that appointed the receiver and should not be divested by the court of coordinate jurisdiction. Bruce v. Manchester and Ky. R. R., C.C., [1 Cir.] 19 F. 342 (1884).' Drexler v. Walters, 290 F.Supp. 150, 156 (D.Minn.1968)."

See also Holley v. General American Life Ins. Co., 101 F.2d 172, 174 (8th Cir. 1939), which states:

"Moreover, it is the established rule that the liquidation of a domestic insurance company under the laws of the state of its domicile, where such laws furnish a comprehensive method for the winding up of its affairs by an officer of the state under the jurisdiction of a court of the state, cannot be interfered with by a federal court. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88, 89, 43 S.Ct. 480, 67 L.Ed. 871; O'Neil v. Welch, 3 Cir., 245 F. 261, 269; Tolfree v. New York Title & Mortgage Co., 2 Cir., 72 F.2d 702, 704; Motlow v. Southern Holding & Securities Corporation, 8 Cir., 95 F.2d 721, 725–726. A federal court will take no action which will impair or will frustrate the jurisdiction of a state court with respect to such proceedings."

For all of the above reasons and since there appears to be no material question of fact but merely issues of law presented, defendants' motion for dismissal is

granted. Further, plaintiff's motion to amend is denied, for even were it allowed it presents no cause of action upon which a claim could be based.

A separate order has been entered.